UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ERIC TOLLIVER, :
        Plaintiff, :
: **OPINION AND ORDER**
v. :
: 16 CV 559 (VB)
DR. WLADYSLAW SIDOROWICZ, NURSE :
JUDITH CAMARA, :
        Defendant. :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Eric Tolliver, proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983, alleging that while he was incarcerated at Sullivan Correctional Facility ("Sullivan"), defendants Dr. Wladyslaw Sidorowicz and Nurse Judith Camara were deliberately indifferent to his medical needs in violation of the Eighth Amendment.

    Before the Court is defendants' motion to dismiss the complaint. (Doc. #14).

    For the reasons set forth below, the motion to dismiss is GRANTED.

    The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

    For purposes of ruling on a motion to dismiss, the Court accepts all factual allegations of the complaint as true, and draws all reasonable inferences in plaintiff's favor.

    On or about November 20, 2014, plaintiff was temporarily transferred to Metropolitan Correctional Center ("MCC") in Manhattan to attend a court hearing. When plaintiff arrived at MCC, staff confiscated his "left foot drop brace" for security reasons. (Compl. at 9). Plaintiff claims the brace had been issued to help him walk following a severe injury he sustained in 2006, which caused "a nerve damage-paralyzed drop foot." (Id.). According to plaintiff,

1

without his brace, he trips "over his own foot when walking because his foot cannot raise[] up on its own, and this also caused a strain on the rest of the nerves and muscles." (Id.).

Plaintiff was detained at MCC for two weeks without his leg brace, causing pain for which he sought treatment from MCC medical staff. MCC medical staff took an x-ray of plaintiff's chest and drew blood to check plaintiff's lungs, liver, and kidneys. PA T. Mitchell also gave plaintiff a physical examination. Plaintiff claims he was transferred to Sullivan before receiving his test results.

Immediately following his arrival at Sullivan on or around December 4, 2014, plaintiff submitted a "sick call slip" requesting to be seen by a doctor because of swelling and pain in his left foot. Plaintiff also requested a magnetic resonance imaging ("MRI"). Plaintiff was seen by a nurse the following day, who provided plaintiff with ibuprofen and "told [him] nothing [was] wrong with [his] leg, all [he had] is a minor strain." (Compl. at 10).

On December 8, 2014, the swelling and pain in plaintiff's leg had worsened, he could barely walk, and his foot was beginning to "change color." (Compl. at 10). Plaintiff requested an emergency sick call and was taken to the clinic in a wheelchair. A nurse examined plaintiff's foot, noticed the swelling and change in color, and told plaintiff she would request an examination by a doctor. The nurse gave plaintiff a cane to help him walk and more ibuprofen.

On December 11, 2014, plaintiff returned to the Sullivan medical clinic and was seen by defendant Nurse Camara. Plaintiff explained to Camara that he could not walk on his left leg without experiencing severe pain and requested an MRI. Camara noted in his medical record that he was walking normally without the cane, and took the cane back from plaintiff. According to plaintiff, however, he was not able to walk normally without a cane.

2

On December 19, 2014, defendant Dr. Sidorowicz examined plaintiff. Plaintiff claims he requested an MRI from Dr. Sidorowicz, but after examining plaintiff's foot and noticing the swelling and discoloration, the doctor told plaintiff nothing was wrong with his foot and gave him a compression stocking to help his blood circulate and ibuprofen for his pain. Plaintiff also claims Dr. Sidorowicz joked that if the swelling did not improve, the leg might require amputation.

On December 30, 2014, plaintiff returned to the medical clinic complaining of severe pain in his lower abdomen where he had a prior surgery for a hernia. Plaintiff was given ibuprofen for his pain.

On March 9, 2015, plaintiff went back to the medical clinic and was seen by a nurse who gave plaintiff ibuprofen for his pain.

On or around April 7, 2015, plaintiff began to feel lightheaded and short of breath. The next day, plaintiff walked from his housing block to the toilet when he felt like he was about to faint. Plaintiff left the toilet to try to reach the officers' desk when he passed out. Plaintiff awoke to see several officers standing over him and telling him to stay on the ground. Plaintiff was then taken to the Sullivan infirmary on a stretcher where his blood sugar level was treated and he stayed overnight. The following morning, Dr. Sidorowicz examined plaintiff and discharged him. Plaintiff then walked from the infirmary to the TV-room to eat breakfast. As soon as he sat down to eat, plaintiff again fainted. Plaintiff awoke to see Dr. Sidorowicz, a nurse, and officers standing over him and asking him if he was okay. Plaintiff was sat up in a wheelchair when he passed out again.

Shortly after plaintiff awoke, an ambulance arrived to transfer him to Catskill Medical Center. Plaintiff underwent several tests at the hospital and was told he had blood clots that

spread from his left leg to his lungs. Plaintiff was transferred to the critical care unit where he spent several days until he was transferred to Albany Medical Center. Plaintiff was hospitalized for approximately two weeks total before he was discharged and returned to Sullivan. Plaintiff now takes Heparin, a blood thinner medication, and has his blood drawn and tested weekly.

Plaintiff claims the failure of Dr. Sidorowicz and Nurse Camara to provide him with the requested MRI deviated from accepted standards of medical practice and caused plaintiff to suffer from "life threatening blood clots." (Compl. at 3). Plaintiff also claims that Nurse Camara violated his rights by taking away his cane and making a false statement in his medical record that he was walking fine without it.

Attached to plaintiff's complaint is a copy of the grievance he filed against defendant Dr. Sidorowicz, dated April 23, 2015, which was denied on May 7, 2015. On April 27, 2015, plaintiff appealed this decision to the superintendent, which was denied on May 11, 2015. Plaintiff appealed the superintendent's decision to the Central Office Review Committee ("CORC") on May 11, 2015, and filed the complaint in this case on January 25, 2016. On February 3, 2016—after plaintiff commenced this action—CORC issued a final decision denying plaintiff's appeal. On December 29, 2015, plaintiff filed a grievance against both Dr. Sidorowicz and Nurse Camara. Plaintiff admits CORC has not yet ruled on this grievance. (Pl.'s Opp'n at 13). Neither of these grievances mention the confiscation of plaintiff's cane.

## DISCUSSION

I.   Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals

4

of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

II.   Eighth Amendment Claims

"To state a claim under § 1983, a plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States (2) which has taken place under color of state law."  Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997).

To assert a claim for constitutionally inadequate medical care under the Eighth Amendment's ban against cruel and unusual punishment, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  This test has both an objective and a subjective component: plaintiff must plead facts showing (i) the alleged deprivation of medical care is "sufficiently serious," and (ii) the officials in question acted with a "sufficiently culpable state of mind."  Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective component has two subparts.  "The first inquiry is whether the prisoner was actually deprived of adequate medical care," keeping in mind that only "reasonable care" is required.  Salahuddin v. Goord, 467 F.3d at 279 (citing Farmer v. Brennan, 511 U.S. 825, 839–40 (1970)).  "Second, the objective test asks whether the inadequacy in medical care is sufficiently serious" by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."  Salahuddin v. Goord, 467 F.3d at 280 (citing Helling v. McKinney, 509 U.S. 25, 32–33 (1993)).

In determining whether an alleged injury is a "serious" medical condition, "factors that have been considered include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'"  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting McGuckin

6

v. Smith, 974 F.2d 1050, 1059–60 (9th Cir. 1992)).  In cases challenging the adequacy of the medical treatment that was given, "the seriousness inquiry is narrower.  For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'"  Salahuddin v. Goord, 467 F.3d at 280 (quoting Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003)).

The subjective component requires a showing that the defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm.  Salahuddin v. Goord, 467 F.3d at 280.  "[T]he charged official must act with a sufficiently culpable state of mind."  Id. (quoting Wilson v. Seiter, 501 U.S. 294, 300 (1991)).  It is well established that "negligence, even if it constitutes medical malpractice, does not, without more," give rise to a constitutional claim.  Chance v. Armstrong, 143 F.3d at 703.

      A.      The MRI Claims

"[M]ere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."  Chance v. Armstrong, 143 F.3d at 698.  The Second Circuit has held that "[w]hether to order an MRI or similar diagnostic treatments is a classic example of a matter for medical judgment, and where the treatment provided is responsive to the prisoner's condition, . . . the fact that a prisoner might prefer different treatment does not give rise to an Eighth Amendment violation."  Victor v. Milicevic, 361 F. App'x 212, 215 (2d Cir. 2010) (summary order) (internal quotation marks omitted); see also Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001)

7

("Disagreements over medications, diagnostic techniques (e.g., the need for X-rays), [or] forms of treatment . . . are not adequate grounds for a Section 1983 claim.").

Here, plaintiff does not allege defendants failed to provide him with medical treatment; he merely alleges a disagreement regarding the medical treatment he did receive. Plaintiff requested an MRI, but was provided instead with a cane, a compression stocking, and pain medication. Such a "disagreement over the proper treatment does not create a constitutional claim." See Chance v. Armstrong, 143 F.3d at 698.

Furthermore, plaintiff makes no allegations suggesting defendants acted with deliberate indifference to his serious medical needs. By his own account, plaintiff was examined and treated by defendants on multiple occasions, and plaintiff has alleged no facts from which it could be inferred that defendants knew of and disregarded "an excessive risk to [plaintiff's] health or safety." See Farmer v. Brennan, 511 U.S. at 837. Plaintiff's claim that Dr. Sidorowicz joked about the possibility of amputating plaintiff's leg fails to meet this standard, even if such joke was made in poor taste.

Accordingly, plaintiff's claims regarding the requested MRI must be dismissed.

B.     The Cane Claim

Similarly, plaintiff has not plausibly alleged that Nurse Camara acted with deliberate indifference when she took away plaintiff's cane. According to the complaint, Camara determined plaintiff did not need a cane based on her observation that plaintiff was walking normally without it. Plaintiff contends he was not in fact walking normally. But this allegation demonstrates a difference of opinion, not deliberate indifference to plaintiff's serious medical needs.

8

Moreover, even if plaintiff was not able to walk normally, Nurse Camara would still be entitled to remove plaintiff's cane without necessarily exhibiting deliberate indifference to his serious medical needs. See, e.g., Covington v. Westchester Cty. Dep't of Corr., 2010 WL 572125, at *7 (S.D.N.Y. Jan. 25, 2010)[1] (denying plaintiff's request for a walking aid was not deliberately indifferent because plaintiff was able to walk and canes present safety concerns in the prison setting); Munlyn v. Pietrie, 2014 WL 3695488, at *6 (W.D.N.Y. July 24, 2014) (taking away plaintiff's neck brace and cane was not deliberately indifferent, but instead "reflect[ed p]laintiff's disagreement with [defendants'] evaluation and assessment of his medical circumstances").

The note Nurse Camara made in plaintiff's medical record demonstrates her belief that plaintiff did not need a cane. Because Camara exhibited a subjective belief that a cane was not medically necessary, and because plaintiff has failed to allege any other facts tending to show that Camara was aware of a substantial risk of harm to plaintiff by removing his cane, plaintiff fails to state the subjective element of a deliberate indifference claim—namely that Camara was aware of a substantial risk of harm. See Salahuddin v. Goord, 467 F.3d at 280–81 (contemporaneous letter written by defendant doctor to the facility's superintendent stating his opinion that "from a medical standpoint, there is no urgency for the cancelled" medical procedure, may have been "an unsound conclusion" but nevertheless demonstrates defendant was not aware of a substantial risk of harm to plaintiff).

Accordingly, plaintiff's claim regarding the cane is dismissed.

---

[1] Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d. Cir. 2009).

C.      Failure to Exhaust

Defendants raise a colorable argument that the complaint should be dismissed due to plaintiff's failure to exhaust his administrative remedies prior to commencing this lawsuit in accordance with the Prison Litigation Reform Act, 42 U.S.C. § 1997e.  But "[d]ismissal under Rule 12(b)(6) for failure to exhaust is . . . appropriate only where nonexhaustion is apparent from the face of the complaint."  Roland v. Smith, 907 F. Supp. 2d 385, 388 (S.D.N.Y. 2012).  In his complaint, plaintiff claims to have exhausted his administrative remedies.  In support of this contention, plaintiff submitted documentation that is not appropriately considered on a motion to dismiss.  While the Court could convert defendants' motion to dismiss to a Rule 56 motion for summary judgment, see id., it declines to do so because the complaint is dismissed for failure to state a claim pursuant to Rule 12(b)(6).

III.     Leave to Amend

A district court ordinarily should not dismiss a pro se complaint for failure to state a claim "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)).  A court must grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."  Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 796 (2d Cir. 1999).

Here, the complaint, even liberally construed, does not contain allegations suggesting plaintiff has valid deliberate indifference claims that he has merely "inadequately or inartfully pleaded" and therefore should "be given a chance to reframe."  Cuoco v. Moritsugu, 222 F.3d at 112.  On the contrary, the Court finds that repleading would be futile because the problems with

plaintiff's claims are substantive, and supplementary or improved pleading will not cure the deficiencies of the complaint. See id.

Accordingly, the Court declines to grant plaintiff leave to amend.

## CONCLUSION

Defendants' motion to dismiss is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #14) and close this case.

Dated: March 2, 2017
       White Plains, NY

                              SO ORDERED:

                              _____
                              Vincent L. Briccetti
                              United States District Judge